**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
CHARMAINE CHRISTIE,

        *Plaintiff*,                                **17 CV 4058**

   *v*.

WINTHROP SOUTH NASSAU UNIVERSITY HEALTH    **COMPLAINT**
SYSTEM, INC.,

        *Defendant*.
-------------------------------------------------------------------------x

        Plaintiff Charmaine Christie, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant Winthrop South Nassau University Health System, Inc., as follows:

### PRELIMINARY STATEMENT

        1.     Plaintiff Charmaine Christie is a Black woman of Jamaican national origin and is 57 years of age. Plaintiff was employed as a Nurse Assistant/Telemetry Technician at Winthrop-University Hospital (the "Hospital"), a member hospital of Defendant Winthrop South Nassau University Health System, Inc., from 2006 through 2016.

        2.     Plaintiff seeks damages and costs against Defendant for discriminating against her based on her race and national origin by subjecting her to a hostile work environment and, ultimately, terminating her employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq*.

        3.     Plaintiff also seeks damages and costs against Defendant for discriminating against her based on her age by subjecting her to a hostile work environment and, ultimately, terminating her employment, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*., and the NYSHRL.

4. Plaintiff also seeks damages and costs against Defendant for retaliating against her for her complaints of race, national origin, and age discrimination, in violation of Title VII, the ADEA, and the NYSHRL.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

5. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under Title VII and the ADEA.

6. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYSHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

7. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right-to-Sue letter dated April 19, 2017, relating to the discriminatory acts described in this Complaint. This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

8. Plaintiff respectfully requests a trial before a jury.

## PARTIES

9. Plaintiff, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

10. Upon information and belief, at all times relevant hereto, Defendant was and is a not-for-profit corporation organized under the laws of the State of New York with a location at 200 Old Country Road, Suite 310, Mineola, New York 11501 in Nassau County.

## STATEMENT OF FACTS

11. Ms. Christie is an experienced healthcare professional with over 20 years of experience in nursing and healthcare. Ms. Christie holds a bachelor's degree from Baruch College and an associate's degree from Queensborough Community College and is a Certified Nursing Assistant and Certified Nursing Technician.

12. In and around 2006, the Hospital hired Ms. Christie as a Patient Care Associate, working on the Hospital's cardiac floor.

13. Throughout her employment at the Hospital, Ms. Christie was a dedicated employee who consistently received positive feedback from the Hospital's management, as well as her patients and coworkers.

14. During her time working on the cardiac floor, Ms. Christie regularly received praise from her supervisor, Paulina Rudolph.

15. On or about May 5, 2013, the Hospital transferred Ms. Christie to the position of Nursing Assistant/Telemetry Technician and moved her from the cardiac floor to "Potter 1," a separate floor of the Hospital.

16. Ms. Christie applied for, interviewed for, and received the position on Potter 1 through normal Hospital procedures.

17. As a Nursing Assistant/Telemetry Technician, Ms. Christie's job duties included taking patient medical histories and vital signs, performing diagnostic procedures, assisting in sterile and non-sterile dressing, performing EKGs, reviewing cardiac strips, and working with electrocardiogram monitors.

18. After her transfer, Ms. Christie began to experience discrimination based on her race, age, and national origin.

19. The Hospital has a systemic pattern of discrimination wherein older non-white employees are treated less well than younger white employees.

20. On or about July 10, 2013, the Hospital told Ms. Christie that the job on Potter 1 "no longer existed," without further explanation.

21. The Hospital informed Ms. Christie that it had one other full-time job available—a less-desirable position in the Hospital's Emergency Room (ER)—and instructed Ms. Christie to apply for that position.

22. Ms. Christie went through the application and interview process for the ER position, and ultimately was offered the job.

23. In the ER Department, Ms. Christie was assigned to report to Lila Sheehan and Liz Conklin, both of whom are white women.

24. Ms. Sheehan, Ms. Conklin, and Hospital management treated Ms. Christie less well because she is older, black, and Jamaican.

25. Throughout Ms. Christie's tenure at the Hospital, there were very few minority and/or dark-skinned older women in the Hospital's ER Department; the majority were white individuals in their 20s and 30s.

26. The Hospital systemically promoted younger white employees over older non-white employees, such as Ms. Christie, even when the older non-white employees were significantly better-qualified.

27. The Hospital justified these promotions by claiming that the younger white employees were a better "culture fit" with the Hospital's largely affluent patient base, based on offensive, discriminatory beliefs that older, dark-skinned minority women could not be professional or sophisticated.

4

28. Younger light-skinned women were treated better than their older dark-skinned counterparts in the terms, conditions, and privileges of their employment.

29. White employees were encouraged to continue their education to become nurses, even receiving tuition reimbursement from the Hospital, while minority employees were discouraged from pursuing additional training or education.

30. For example, during Ms. Christie's employment at the Hospital, Althea Munroe, another dark-skinned Jamaican Nurse Assistant, was terminated while she was in nursing school, yet at the same time there were several white female Nurse Assistants in nursing school.

31. Older minority dark-skinned women were given worse job assignments than younger white women.

32. Ms. Christie and Marlene Pessoa, a dark-skinned Caribbean Nursing Assistant in her 50s, were regularly assigned the most difficult patients, while their white counterparts were not.

33. Ms. Christie and other older dark-skinned women were consistently assigned night shifts that younger white employees refused.

34. Ms. Christie's supervisors resented her receiving recognition for her job performance and attempted to sabotage her work.

35. For example, in and around June 2014, Ms. Christie received a "Shining Star" Award from the Hospital in recognition her outstanding job performance, as well as public praise for the quality of her care from Srihari S. Naidu, MD, Director of the Hospital's Cardiac Catheterization Laboratory, Interventional Cardiology Fellowship Program, and Hypertrophic Cardiomyopathy Center.

36. Shortly afterward, the Hospital informed Ms. Christie, without explanation, that she was restricted from working overtime for 90 days.

37. Ms. Christie complained about this baseless restriction to the Hospital's management and Human Resources (HR) Department, but to no avail.

38. In and around March 2016, when Ms. Christie was recognized by Dr. Collin Brathwaite for her outstanding work with a patient, Ms. Sheehan did not even recognize her accomplishments.

39. By contrast, when white nurse technicians received praise, Ms. Sheehan would share the positive feedback with all department members at staff meetings.

40. In fact, Ms. Sheehan attempted to conceal Ms. Christie's positive feedback from Ms. Christie, going so far as to hide for two months a note of appreciation a patient had written to Ms. Christie.

41. The discrimination against Jamaican dark-skinned women was so severe, in fact, that Ms. Christie witnessed Doreen Sang, a Jamaican Assistant Nurse Manager, pretend that she was Filipino, rather than Jamaican, due to the systemic race and national origin discrimination at the Hospital.

42. Despite the ongoing discrimination, Ms. Christie continued to perform her job responsibilities to the best of her ability.

43. In 2016, Ms. Christie received a highly positive performance review.

44. The lateness category was one of the only categories in which Ms. Christie received a "needs improvement" rating in her 2016 review.

45. However, these instances of Ms. Christie's supposed "lateness" were all *de minimis*, in the one-minute range.

46. Moreover, light-skinned female employees—such as Cassandra Oliveras, a white nurse technician—were consistently 15 to 20 minutes late, but were never written up.

47. Ms. Christie repeatedly complained to HR and the Hospital's management, both in writing and verbally, about the ongoing discrimination throughout 2014, 2015, and 2016.

48. However, Ms. Christie's complaints were not taken seriously, and the problems were never addressed, as Ms. Christie had made herself a target by complaining to HR.

49. In and around April 2016, Ms. Christie took several days off work to care for her mother, for whom Ms. Christie is the primary caretaker.

50. Ms. Christie had more than enough accrued sick leave and paid time off to cover these absences.

51. Yet the Hospital retaliated against her for these absences, suspending her on May 3, 2016, and ultimately terminating her employment on May 11, 2016.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII

52. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 51 with the same force as though separately alleged herein.

53. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race or national origin.

54. Defendant discriminated against Plaintiff on the basis of her race and national origin by subjecting her to a hostile work environment.

55. As such, Defendant has violated Title VII.

56. As a direct and proximate consequence of Defendant's race and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

57. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Hostile Work Environment in Violation of the ADEA

58. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 57 with the same force as though separately alleged herein.

59. The ADEA prohibits an employer from discriminating against employees of over 40 years of age on the basis of age.

60. Plaintiff is over 40 years of age.

61. Defendant discriminated against Plaintiff on the basis of her age by subjecting her to a hostile work environment.

62. As such, Defendant has violated the ADEA.

63. As a direct and proximate consequence of Defendant's age discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

64. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYSHRL

65. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 64 with the same force as though separately alleged herein.

66. The NYSHRL prohibits an employer from discriminating against an employee on the basis of race, national origin, or age.

67. Defendant discriminated against Plaintiff on the basis of her race, national origin, and age by subjecting her to a hostile work environment.

68. As such, Defendant has violated the NYSHRL.

69. As a direct and proximate consequence of Defendant's race, national origin, and age discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

70. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FOURTH CAUSE OF ACTION
### Wrongful Termination in Violation of Title VII

71. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

72. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race or national origin.

73. Defendant discriminated against Plaintiff on the basis of her race and national origin by terminating her employment.

74. As such, Defendant has violated Title VII.

75. As a direct and proximate consequence of Defendant's race and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

76. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CAUSE OF ACTION
## Wrongful Termination in Violation of the ADEA

77. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 76 with the same force as though separately alleged herein.

78. The ADEA prohibits an employer from discriminating against employees of over 40 years of age on the basis of age.

79. Plaintiff is over 40 years of age.

80. Defendant discriminated against Plaintiff on the basis of her age by terminating her employment.

81. As such, Defendant has violated the ADEA.

82. As a direct and proximate consequence of Defendant's age discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

83. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SIXTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYSHRL

84. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 83 with the same force as though separately alleged herein.

85. The NYSHRL prohibits an employer from discriminating against an employee on the basis of race, national origin, or age.

86. Defendant discriminated against Plaintiff on the basis of her race, national origin, and age by subjecting her to a hostile work environment.

87. As such, Defendant has violated the NYSHRL.

88. As a direct and proximate consequence of Defendant's race, national origin, and age discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

89. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of Title VII

90. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 89 with the same force as though separately alleged herein.

91. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

92. Plaintiff engaged in protected activity under Title VII when she properly complained to Defendant about race and national origin discrimination prohibited under Title VII.

93. Defendant retaliated against Plaintiff by subjecting her to further discrimination and harassment and, ultimately, terminating her employment.

94. As such, Defendant has violated Title VII.

95. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

### EIGHTH CAUSE OF ACTION
### Retaliation in Violation of the ADEA

96. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 95 with the same force as though separately alleged herein.

97. The ADEA prohibits an employer from retaliating against an employee for engaging in protected activity under the ADEA.

98. Plaintiff engaged in protected activity under the ADEA when she properly complained to Defendant about age discrimination prohibited under the ADEA.

99. Defendant retaliated against Plaintiff by subjecting her to further discrimination and harassment and, ultimately, terminating her employment.

100. As such, Defendant has violated the ADEA.

101. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

### NINTH CAUSE OF ACTION
### Retaliation in Violation of the NYSHRL

102. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 101 with the same force as though separately alleged herein.

103. The NYSHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYSHRL.

104. Plaintiff engaged in protected activity under the NYSHRL when she properly complained to Defendant about race, national origin, and age discrimination prohibited under the NYSHRL.

105. Defendant retaliated against Plaintiff by subjecting her to further discrimination and harassment and, ultimately, terminating her employment.

106. As such, Defendant has violated the NYSHRL.

107. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial;

G. For the seventh cause of action, damages to be determined at trial;

H. For the eighth cause of action, damages to be determined at trial;

I. For the ninth cause of action, damages to be determined at trial; and

J. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 7, 2017

By: _____
Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*